MARTIN, Justice,
dissenting in part.
The defendant appeals from the order of equitable distribution of May 27, 2007. The appellee has not filed a brief in this appeal.
The parties do not own any real property. This is an equitable distribution case.
Only the appellant has filed a brief with this Court. The only issues before the Court are those argued by the appellant in her brief. She argues two issues:
1. “Did the trial court err in failing to find that the per capita distribution received during the marriage was the separate property of one spouse and thus the property acquired with the distribution remained the separate property of that spouse and was not subject to equitable distribution?”
2. “Did the trial court err in refusing to grant the wife possession and ownership of her automobile ...”
Cherokee Code, § 50-11, Property Distribution, is applicable to this appeal.
(a) Either former spouse may file an action in the Cherokee court seeking equitable distribution of personal property and real property, owned or acquired jointly by the parties during the marriage.
The per capita funds received by members of the EBCI are the separate property of the recipient, whether married or single. Per capita funds deposited by a recipient in a joint account of recipient and spouse remain separate property.
When a married person uses his per capita money to purchase property, the issue of whether the purchased property is personal or marital property depends upon all the facts and circumstances of the purchase and use of the property.
After her marriage to the appellee, the 18 year old appellant received $47,000.00 of per capita funds. She and her husband opened a bank account in their joint names and she deposited about $25,000.00 of her per capita money in the account.
Thereafter the parties used the appellants’ per capita funds to purchase a trailer where they lived, marital assets that they both used such as furniture, fixtures, entertainment systems, televisions, food and clothing. The appellant became pregnant and a child was born requiring use of her per capita funds. Both parties filed item *426 ized lists of the marital property. The following evidence from the transcript supports a finding that the property purchased with the per capita funds of the appellant was marital property:
Saunooke: During the time that you were married to Mr. Squirrel did you purchase items during your marriage that you both used?
Queen: Yes sir.
Saunooke: Okay, and do you know how much you paid for that trailer?
Queen: 19,500.
Saunooke: And the funds for that trailer, where did they come from?
Queen: They came from my big per cap.
Saunooke: Your big per cap? How much was in that big per cap?
Queen: 47,000.
Saunooke: And did you get that after you were married?
Queen: Yeah.
Saunooke: And with the big per cap check, when you purchased the trailer did you both live in it?
Queen: Yes Sir
Saunooke: Whose name was it titled in?
Queen: It was in his, I guess she’s his cousin’s name.
Saunooke: So it was never titled to you personally?
Queen: No.
Saunooke: You just paid the money for it.
Queen: Yep.
Martin: Why would you pay 19,500 dollars for something and not put it in your name?
Queen: Well, we was kept getting told that we would get the title switched over to our name but it just never was done.
Saunooke: Well did you say, if I buy this and we ever get divorced I’m taking my money back.
Queen: No.
Saunooke: Did you tell him that you bought the trailer and intended for it to only be your property and not for both of you to use?
Queen: No.
Saunooke: Well, what does it list?
Queen: Well, it list stuff that I had purchased during the marriage.
Saunooke: Those are things you purchase during the marriage?
Queen: Yeah.
Saunooke: And who has possession of all of those items right now?
Queen: I do.
Saunooke: So your per cap money paid for the car. And when you bought the car did you even have a license at that time?
Queen: No sir.
Saunooke: Did you intend it to be a gift to the marriage?
Queen: No sir.
Saunooke: Well you couldn’t drive it could you?
Queen: No.
Saunooke: So your telling the court you bought a car that you couldn’t drive but didn’t mean it to be a gift to the marriage?
Queen: The car was meant for my hospital; well I had to go back and forth to the hospital.
Saunooke: Well who drove it?
Queen: Well he did.
Saunooke: So Robbie drove you to the hospital.
Queen: Yeah.
Saunooke: And did you have a bank account while you were married with Mr. Squirrel?
*427 Queen: Yes sir.
Saunooke: Whose name was the bank account in?
Queen: It was in mine and his name.
Saunooke: You both had access to it?
Queen: Yes.
Saunooke: You both put money in that account?
Queen: I put money in the account, he didn’t.
Saunooke: And did you use your per cap money to pay expenses during the marriage?
Queen: Um
Saunooke: Light bill, utilities?
Queen: Yes.
Saunooke: Did he use his money to pay expenses during the marriage?
Queen: Um, not really.
Saunooke: Did you intend at the time that you used your funds that they would only be for your personal use and no one else’s.
Queen: No.
Saunooke: Okay. Does this equitable distribution affidavit accurately reflect what you believe the value of your marital assets are?
Queen: Yes sir.
Saunooke: And that bank account was in just your name or in yours and Robbie’s name?
Queen: Mine and his.
Saunooke: Did at anytime, did Miss Queen tell you that her per cap money was only for her?
Owle: No sir.
Saunooke: Did either one of them ever say to the best of your knowledge that they wanted to keep their assets separate or keep things separate?
Owle: No.
Saunooke: What did you collectively agree to use these monies for?
Squirrel: Buy a trailer, purchase a trailer, furniture for the trailer, and basically bills, stuff like that.
Saunooke: Living expenses?
Squirrel: Yes.
Saunooke: You bought food for the year or so that you were married. Is it safe to say that other than the job you say you had, you were living off her per cap and your per cap together, that was your basic funding during the marriage?
Squirrel: Yeah.
Saunooke: And that’s what you bought and paid your bills with?
Squirrel: Yeah.
Saunooke: That you bought your clothing and your marital property with?
Squirrel: Yes.
Saunooke: You didn’t have any other sources of income did you?
Squirrel: No, my grandma would give me money that was about it.
Queen: Yeah, that money right there was actually for was spent on the furniture.
Nestler: And I guess it was your testimony, that Mr. Saunooke asked you that um everything that you had, I guess everything that was purchased with anything that was in the trailer was purchased with either your big per cap or your small per caps.
Queen: Yes sir.
Saunooke: I’m not saying that he paid all the bills, the money that paid your marital bills, that’s biEs you had while you and he were married came partly from his per cap.
Queen: Yeah partly.
Saunooke: And partly from yours.
Queen: Yes.
Saunooke: You jointly contributed to your marriage didn’t you?
*428 Queen: Yes.
Saunooke: You intended to stay married to him for as long as you both lived didn’tyou?
Queen: Yeah.
Saunooke: It was your intent wasn’t it to utilize whatever resources were available for both of you to benefit, for your child to benefit, for your marriage to benefit. That was your intent wasn’t it?
Queen: Yes.
Transcript on pages: 13, 14-15, 16, 20, 21, 24-25, 28, 29, 30, 40-42, 48, 50, 51-52, 54,55.
Both parties filed equitable distribution affidavits in this case. The appellee lists the following property subject to distribution:
1. Mobile Home—$19,000.00
2. Car—$4,000.00
3. Home Theater—$1,500.00
4. Furniture—$2,400,00
5. Television—$1,800.00
Appellant does not list any property subject to equitable distribution but does list separate property belonging to her and appellee.
The testimony supports the conclusion that the appellant intended that the use of her per capita funds was for their mutual benefit and to secure their lifestyle and future together as a married couple. The mobile home acquired with the per capita monies is marital property and subject to equitable distribution. The parties lived in the mobile home as a married couple with their infant child. They used the trailer with the furniture and other contents as their home. They used appellant’s money to buy the trailer. It was “owned or acquired jointly” by them. They jointly contributed to the marriage and she intended to stay married to him “as long as they both lived.”
To hold that the mobile home was her separate property contradicts the evidence as well as common sense. The trial judge saw the witnesses and heard them testimony. The record supports his decision to hold the mobile home as marital property and subject to equitable distribution.
However, the trial court erred in holding that the automobile purchased by the appellant with her per capita funds was marital property. The appellant testified that she did not intend that the automobile was a gift to the marriage. It was for her use to go to and from the hospital as she was pregnant. There is no evidence that the car was marital property. It was appellant’s personal property and not subject to equitable distribution.
Except as hereby amended, the order by the trial court of May 27, 2007 should be Affirmed, and the case remanded to the trial court for further proceedings not inconsistent with this opinion.